```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

LISA Y. CAMPUZANO-BURGOS et al. : CIVIL ACTION
:
     v. :
:
MIDLAND CREDIT MGMT., et al.   : NO. 07-92

MEMORANDUM

Dalzell, J.                                                                         July 26, 2007

       In this putative class action under the Fair Debt Collection Practices Act ("FDCPA"), we address the question of whether an officer of the debt collector who signs a dunning letter must have any involvement with the collection of the debt in question. Although courts have examined related questions in some depth, it appears that this is a question of first impression and so we treat it in some detail.

**Facts[1] and Procedural History**

       Named plaintiffs Lisa Campuzano-Burgos, Charmaine Angus, and Tiaisha Hall each received a debt collection letter from defendant Midland Credit Management ("MCM") between March and August of 2006. Each of the letters was signed[2] by either J. Brandon Black, President of MCM or Ron Eckhardt, Executive Vice President and General Manager of Consumer Debt. The letters include Black's and Eckhardt's titles below their names at the bottom of the letter. Neither Black nor Eckhardt had any role in the collection of these particular debts nor were they aware that

---

      [1] The parties have stipulated to all facts relevant to these motions, so no factual dispute prevents us from addressing this question on summary judgment.

      [2] Although none of the letters included a holographic signature, the parties have stipulated that either Black or Eckhardt was the signatory of each of the letters.

collection letters were being sent to these particular debtors. They are, however, real people and they hold the positions shown on the letters.

On January 22, 2007, plaintiffs filed an amended class action complaint alleging violations of the FDCPA on behalf of themselves and all other Pennsylvania residents who had received similar letters from MCM on or after January 22, 2006.[3] At the Rule 16 conference on April 9, 2007, the parties agreed to brief the question of statutory liability before addressing any class certification issues. Accordingly, they filed a joint statement of stipulated facts and cross-motions for summary judgment, which were limited to the question of whether these facts represented an actionable FDCPA violation.[4] It is these motions that we address here.

**Analysis**

The FDCPA says that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e. Without limiting that broad statement, the statute then goes on to list sixteen specific prohibited practices. Of those, the

---

[3] The complaint actually contemplates the certification of three subclasses, one for the recipients of each of the letters, which differ slightly in their layout and terms.

[4] Defendants, in a footnote to their response, seek summary judgment as to all defendants other than MCM because, they allege, plaintiffs have failed to explain why those defendants should be liable. Because the parties agreed at the Rule 16 conference to reserve that issue and because defendants raise it only in a footnote to a response, we decline to address it here.

only one that plaintiffs claim applies here is "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval."  15 U.S.C. § 1692e(9).

Our Court of Appeals has directed us to construe the language of the FDCPA broadly and to analyze letters such as these "from the perspective of the least sophisticated debtor." Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006) (internal quotation omitted).  Although our analysis is from the perspective of the least sophisticated debtor, we must avoid "bizarre or idiosyncratic interpretations of collection notices by preserving a quotient[5] of reasonableness and presuming a basic level of understanding and willingness to read with care." Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000).  By presuming that the debtor, however unsophisticated, reads the notice with care, we ensure that we consider the letter as a whole and that we understand the debt collector's statements in their proper context.  See Rosenau v. Unifund Corp., 2007 WL 1892888 (E.D. Pa. Jun. 28, 2007).

"The basic purpose of the least-sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."  Brown, 464 F.3d at 453 (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)).  Applying

---

[5] As in original, which perhaps the author intended to mean quantum.

3

this standard, a letter "is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." Wilson, 225 F.3d at 354 (quoting Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996)).

Plaintiffs allege that the signatures on the letters are false, deceptive, or misleading because they give the impression that these individual debts are being pursued by high-ranking officers of the company.  In addition to violating the general prohibition against deceptive and misleading practices, they claim that this "creates a false impression" as to the letters' "source, authorization, or approval" in violation of 15 U.S.C. § 1692e(9).

Although this case presents a question of first impression,[6] there are several authorities that have addressed related issues that can guide us.  The most significant of these are the cases dealing with the use of attorneys in debt collection.

The FDCPA specifically bars "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney."  15 U.S.C. § 1692e(3).  This prohibition acknowledges the special authority that a letter from an attorney connotes.  As Judge Evans pungently put it for the Seventh Circuit, "[a]n unsophisticated consumer, getting a letter

---

[6] Defendants' recurring argument that this case represents a simple application of existing FDCPA jurisprudence is unconvincing.  As we will make clear, this case differs significantly from the existing cases that defendants cite. Neither party has identified a single case from any jurisdiction that squarely addresses the issue presented here.

4

from an 'attorney,' knows the price of poker has just gone up." Avila v. Rubin, 84 F.3d 222, 229 (7th Cir. 1996).  Because attorneys have special status, letters "purporting to be written by attorneys have a greater weight than those written by laymen." Id. (quoting American Bar Assoc., Formal Opinion 68 (1932)).

Courts have also found that communications are false or misleading when, although they come from a licensed attorney, the lawyer has no involvement with the debt.  Here again the concern is that debt collectors seek to trade on the attorney's status and authority when "the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking."  Id.  Because any other finding would be detrimental to professional standards and would allow attorneys to sell their names (and authority) to debt collectors, "if a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file."  Id.

But a lawyer is not the only figure who can get the debtor's knees knocking.  An escalation from a lowly collection agent to a senior executive of the company could similarly demonstrate to a consumer that the debt collector means business. It is, of course, no accident that MCM used the names and titles of its executives on the collection letters at issue here.  They

5

expect, either based on research they may have conducted or just as a matter of common sense, that a title such as "President" or "Executive Vice President" connotes authority and is more likely to generate a response.

Although <u>Clomon</u> dealt with facts similar to <u>Avila</u>, its reasoning focused not on the attorney's professional obligations but on the additional authority his signature connoted. A debt collector may use that authority to prod a recalcitrant debtor to pay up, but only if the attorney is directly involved in the collection process. "[T]he use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent." <u>Clomon</u>, 988 F.2d at 1321. Similarly, "the use of an attorney's signature implies -- at least in the absence of language to the contrary -- that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent." <u>Id.</u>

Though its facts deal with an attorney, <u>Clomon</u> (and to a lesser degree <u>Avila</u>) expresses a general concern with debt collectors' practice of falsely implying that someone in a position of real authority is supervising the collection of this debt.[7] These concerns readily generalize to other situations,

---

[7] Defendants' claim that these cases and others make it "clear that a non-attorney signatory on a collection letter cannot form the basis of a claim under § 1692e or §1692e(9)," Def. Resp. at 8 n.4, is -- to use a word that defendants seem fond of -- absurd. Even if the cases defendants cite made such a broad statement -- and none of them do -- it would clearly be
(continued...)

6

like ours, where debt collectors attempt to goad a debtor into paying by using a signatory who has no involvement in the handling of the debtor's case as a signal that the collection process has escalated to a graver level or, to extend Judge Evans's imagery, to convey that a high-roller has entered the game.

The next line of cases that are relevant to our analysis are those dealing with the use of so-called "desk names", that is, false names that debt collection employees adopt to protect their own privacy.  The courts that have considered this issue have found that, so long as the desk name identifies a particular person, it is immaterial whether it is his or her actual name or a name adopted for professional purposes.  See, e.g., Youngblood v. GC Svcs. Ltd. P'ship, 186 F. Supp. 2d 695, 700 (W.D. Tex. 2002); Johnson v. NCB Collection Svcs., 799 F. Supp. 1298, 1304 (D. Conn. 1992).  Although an assumed name gives a false impression as to who created the letter, if that name would have no meaning for the debtor, there is no danger that the debtor will react differently than if the letter were signed with the employee's real name.  As Youngblood observed, "[n]ames are arbitrary labels used to identify one person from another.  They can be changed for any number of reasons. . . .  The given name of the employee from whose desk the letter was sent is immaterial, and the use of a professional name or desk name, when used

---

[7](...continued)
dicta since those cases all deal exclusively with attorney signatories.  That no plaintiff appears to have sought to apply these standards to corporate officers does not mean that plaintiffs here cannot do so.

properly, is no violation of § 1692e." 186 F. Supp. 2d at 700. Or, put another way, one dandelion is as unwanted as another. Thus, where a desk name identifies a unique employee of the debt collector, the name signed to the letter cannot be fairly regarded as being used to further the collection of the debt and so is not assumed for a fraudulent purpose.

We next consider the Federal Trade Commission's 1988 commentary on the FDCPA, 53 Fed. Reg. 50097. Because the FDCPA does not give the FTC rulemaking authority in this area, the commentary does not have the force of law and is not entitled to deference. Dutton v. Wolpoff & Abramson, 5 F.3d 649, 654 (3d Cir. 1993). We may, however, consider it as persuasive authority, and courts of appeals, including our own, have on occasion done so. See Brown, 464 F.3d at 455-56; Kaltenbach v. Richards, 464 F.3d 524, 528 (5th Cir. 2006).[8] The commentary says that § 1692e(9) "covers documents that fraudulently appear to be official government documents, or otherwise mislead the recipient as to their authorship." 53 Fed. Reg. at 50106. An unsophisticated consumer, receiving a letter signed by the president of a corporation, will likely read that letter as having been written, if not personally by the signatory, at least at his or her specific behest. Although the courts that have addressed the question have found that the word "source" in § 1692e(9) refers to the company seeking to collect the debt, see, e.g., Youngblood, 186 F. Supp. 2d at 700; Johnson, 799 F. Supp.

---

[8] Kaltenbach actually found, contrary to our own Court of Appeals, that the commentary was entitled to Chevron deference.

at 1304, the words "authorization" and "approval" can be interpreted more broadly[9] so as to encompass the individual employee who reviewed the debtor's file and caused the letter to be sent.

Considering these authorities together, we find that where some aspect of a debt collector's communication -- whether explicit or implied -- has the purpose or effect of making a debtor more likely to respond, the FDCPA requires that it be true.  Thus, because a debtor is more likely to respond to a letter from an attorney and is likely to assume that the attorney is familiar with his or her case, a dunning letter that a lawyer signs must have actually been reviewed by that attorney. Conversely, because the use of a desk name does not and cannot have the purpose or effect of making a debtor more likely to respond, it is not deceptive or misleading even though it is technically untrue.  Here, the use of top executives of the company as signatories is likely meant to impress upon debtors the seriousness of the communication and will almost certainly have such an effect on at least some debtors.  Because the parties have stipulated that those executives did not review plaintiffs' cases, and because the signature of an executive, no less than the signature of an attorney, conveys that the executive had <u>some</u> actual involvement in the decision to send the

---

[9] "Because the FDCPA is a remedial statute, we construe its language broadly, so as to effect its purpose." <u>Brown</u>, 464 F.3d at 453 (internal citations omitted).  We also note in passing that the courts that have construed "source" as referring only to the company were not operating under this specific directive from the Court of Appeals to construe the statute broadly.

letter to a particular debtor, we find that the letters here are deceptive and misleading within the meaning of Section 1692e.[10]

Because the individually numbered sub-parts of Section 1692e do not limit the overall prohibition against deceptive and misleading statements, we need not directly address the question of whether these statements also violate Section 1692e(9).  We will grant plaintiffs' motion (and deny defendants') on the grounds that the challenged statements violate the broad prohibition of Section 1692e itself.


BY THE COURT:


/s/ Stewart Dalzell, J.

---

[10] Because we must always consider the alleged misstatement in the context of the full letter, we cannot say that any use of an executive as a signatory would be subject to sanction under the FDCPA.  If, for example, the text of the letter made clear to the recipient that the executive had not individually reviewed the debtor's account, the situation might well be different.  Here, of course, there is no suggestion in the letters that the signatories were not actively involved in the collection of these particular debts and so the context does nothing to excuse defendants' actions.

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LISA Y. CAMPUZANO-BURGOS et al. :   CIVIL ACTION
                                :
        v.                      :
                                :
MIDLAND CREDIT MGMT., et al.    :   NO. 07-92
```

ORDER

AND NOW, this 26th day of July, 2007, upon consideration of the parties' joint statement of facts (docket entry # 18), defendants' motion for partial summary judgment (docket entry # 19), plaintiffs' motion for partial summary judgment (docket entry # 20), and the parties' responses, and for the reasons articulated in the accompanying Memorandum of Law, it is hereby ORDERED that:

    1.   Defendants' motion for partial summary judgment is DENIED;

    2.   Plaintiffs' motion for partial summary judgment is GRANTED; and

    3.   A status conference to consider how next to proceed shall CONVENE in Chambers on July 31, 2007 at 10:30 a.m.

BY THE COURT:

/s/ Stewart Dalzell, J.